FILED
2025 May-29 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHONTIKA PARKER LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:23-cv-01701-JHE |
| | ) | |
| BCDC EMPLOYEECO LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Shontika Parker Lewis ("Lewis") and Defendants BCDC EmployeeCo, LLC, ("BCDC") and Tenet Healthcare Corporation ("Tenet") have moved for approval of their settlement.  (Doc. 23).  This represents the resolution of a disputed matter under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  For the reasons set forth below, the motion for settlement approval is **GRANTED**.

### I. Background

According to her complaint, Lewis was jointly employed by Defendants at Princeton Baptist Medical Center in Jefferson County, Alabama.  (Doc. 1 at ¶¶ 11-16, 19).  Lewis alleges that she routinely worked more than 40 hours per week from August 2020 through June 2021, but was only paid the overtime premium required by the FLSA for one week.  (*Id.* at ¶¶ 31-32).  Lewis says she was promoted to a non-exempt supervisory position in June 2021, but Defendants again failed to pay her overtime compensation for the majority of the time she was in this position.  (*Id.*

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 12).

at ¶¶ 36-53).  When Lewis complained, Defendants retaliated against her by increasing her workload and hours.  (*Id.* at ¶ 52).  In June 2022, Lewis resigned due to the lack of payment for overtime.  (*Id.* at ¶ 63).

Lewis filed suit on December 15, 2023.  (Doc. 1).  Her complaint raises both FLSA and non-FLSA claims.  Under the FLSA, Lewis asserts a claim for unpaid overtime (*id.* at ¶¶ 83-114) and a claim for retaliation (*id.* at ¶¶ 115-138).  Under Alabama state law, Lewis asserts claims for unjust enrichment (*id.* at ¶¶ 139-153), breach of contract (*id.* at ¶¶ 154-171), conversion (*id.* at ¶¶ 172-173), and promissory fraud (*id.* at ¶¶ 174-196).  Defendants did not answer the complaint; rather, the parties jointly moved to stay this case pending arbitration.  (Doc. 9).  The undersigned granted that motion on February 14, 2024.  (Doc. 14).

The parties filed status reports from April 2024 until March 2025 apprising the court of the status of the arbitration proceedings.  (Docs. 15, 17, 18, 19, 20 & 22).  In their last status report, the parties indicated that they had reached a settlement and would submit that settlement for court approval.  (Doc. 22).  The parties did so on April 16, 2025.  (Doc. 23).

In the motion for settlement approval, the parties note that they still dispute Defendants' liability.  Specifically, Lewis stands by the allegations in her complaint, while Defendants argue that they acted in good faith, that Lewis was properly paid, and that they appropriately classified Lewis as an exempt worker under the executive and/or administrative exemptions.  (Doc. 23 at 2, ¶¶ 2-3).  The parties note that, absent settlement, further testimony would need to be gathered concerning the good faith issue.  (*Id.* at 7).  This would significantly increase litigation costs.  (*Id.*).

The parties have submitted their settlement agreement as an exhibit to the motion for settlement approval.  (Doc. 23-1).  Under the agreement's terms, Lewis receives two separate payments: a check for $7,283.30 "for alleged wage-based claims," and a check for $7,283.29 for

"alleged liquidated and non-wage-based damages." (*Id.* at 4). The parties represent that these amounts were calculated using Defendants' records; Lewis believes they represent a fair and reasonable compromise of her claims, while Defendants contend Lewis will receive more in settlement than she could expect to recover if she prevailed at arbitration. (Doc. 23 at 8). The agreement provides that $10,433.41 will be paid to Lewis's counsel for attorney's fees, costs, and expenses. (Doc. 23-1 at 4). The parties represent that this amount was "negotiated at arms' length at the conclusion of the negotiation of Plaintiff's damages . . . ." (Doc. 23 at 8).

The parties' settlement agreement also contains two notable non-monetary terms. First, Paragraphs I(F), I(G), and VI(A), read together, operate as a general release of a litany of claims beyond the claims asserted in this action. (*See* doc. 23-1 at 2-3, 5). Under those provisions, Lewis releases "any and all manner of action or actions, cause or causes of action, in law or in equity, suits, arbitrations, debts, liens, contracts, torts, agreements, promises, liability, claims, demands, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, which Plaintiff now has or may hereafter have (except as otherwise provided herein below) against the Released Parties or any of them, by reason of any matter, cause, or thing whatsoever, including Plaintiff's employment with any of the Released Parties, her compensation, and/or her separation therefrom, from the beginning of time to the date hereof," including a variety of listed statutory and common-law claims (but exempting FLSA claims, which are released in a separate provision). (*Id.* at 2-3). Second, the agreement includes a confidentiality provision barring Lewis from "display[ing], discuss[ing], or mak[ing] public in any manner whatsoever the fact of or terms of this Agreement with anyone except her accountant(s), attorney(s), and/or spouse unless required to discuss the same by order of a court of competent jurisdiction" and from "contact[ing] media, or respond[ing] to media, regarding the fact of or terms of this Agreement." (Doc. 23-1 at 5-6).

On May 16, 2025, the undersigned held a telephone conference with the parties to discuss those terms. (*See* doc. 24 and following minute entry). The parties have also submitted supplemental authority to the court by email in support of the release provision.

## II. Analysis

### A. Reasonableness of Lewis's Compromise of Her Claims

If an employee proves her employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011). Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.

In *Lynn's Food Stores, Inc. v. United Stat*es, 679 F.2d 1350, 1355 (11th Cir. 1982), the Eleventh Circuit stated there is only one context in which compromises of FLSA back wage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other

4

damages due under the statute. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

Having reviewed the parties' motion and the settlement agreement, the undersigned finds that they have reached a fair and reasonable resolution of a bona fide dispute. As discussed above, Lewis believes she has reasonably compromised her claims, while Defendants believe that Lewis is receiving more than she would be entitled to if successful at arbitration. Further, Defendants have potential defenses to some of Lewis's FLSA claims. If they are correct that she was an exempt worker, Lewis would not be entitled to overtime compensation for any periods of time for which an exemption applied; if Defendants successfully assert a good faith defense, Lewis would not be entitled to liquidated damages. While the specific records of Lewis's hours are not before the court, the undersigned notes that Lewis is receiving around one half of the overtime she claims in her complaint, plus a roughly equal amount of liquidated damages. Under the circumstances, the undersigned finds that this is reasonable, and the undersigned will not require the parties to further explain how they arrived at the settlement amounts.

### B. Reasonableness of Attorney's Fees

"Where the attorney's fee was agreed upon separately, without regard to the amount paid to the plaintiff, then 'unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" *Davis v. The Filta Group, Inc.*, 2010 WL 3958701, *2 (M.D. Fla. Sept. 20, 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, *5 (M.D. Fla. Aug. 4, 2009)). The parties represent that, consistent with *Lynn's Food Stores*, attorney's fees were negotiated after separately negotiating Lewis's damages. (Doc. 23 at 8). As such, there is

5

no reason to believe that Lewis's recovery was adversely affected by the attorney's fees. Accordingly, the undersigned will not separately consider the reasonableness of the fees.

### C. Release of Unrelated Claims

The next issues is the general release provision. An employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). As such, the undersigned often strikes such provisions. However, the undersigned finds that the release in this case is not "a gratuitous . . . release of all claims in exchange for money unconditionally owed to the employee . . . ." *Id.* Specifically, the undersigned is mindful that this is not a pure FLSA case; rather, Lewis has a variety of state law claims that operate outside the context of the *Lynn's Food Stores* approval process. If Lewis had raised those claims alone, the court would not generally have a role in approving an agreement releasing them. The undersigned also notes that there is nothing in the way this settlement came about that appears to support that Defendants "leveraged" Lewis's FLSA claims to secure the general release provision. And, by email to the court (copying Plaintiff's counsel), Defendants highlight that "Plaintiff's counsel has represented that no other potential claims are known at this time and, importantly, the release does not waive future claims."

Additionally, Defendants have provided supplemental authority in which courts have approved general releases in the FLSA context. *See Lee III v. Smarter Logistics*, No. 8:23-CV-2336-JLB-TGW, 2025 WL 438155, at *2 (M.D. Fla. Jan. 3, 2025), *report and recommendation adopted sub nom. Lee v. Smarter Logistics*, No. 8:23-CV-02336-JLB-TGW, 2025 WL 436720 (M.D. Fla. Feb. 7, 2025) (approving general release in case where FLSA plaintiff also raised non-FLSA claims when "the settlement amount [was] partly attributable to the inclusion of the

releases"); *O'Byrn v. Allied Home Improvement, Inc.*, No. 0:24-CV-61755, 2025 WL 1170640, at

*2 (S.D. Fla. Apr. 7, 2025), *report and recommendation adopted,* No. 0:24-CV-61755, 2025 WL

1169083 (S.D. Fla. Apr. 22, 2025) (approving general release where "the parties have received the

advice of experienced counsel" who believed the settlement to be reasonable and fair); *Redington*

*v. N. Am. Bison LLC*, No. 0:24-CV-62144, 2025 WL 672877, at *2 (S.D. Fla. Feb. 26, 2025),

*report and recommendation adopted,* No. 0:24-CV-62144, 2025 WL 671574 (S.D. Fla. Mar. 3,

2025) (same).  While none of these cases are identical to the circumstances here, the undersigned

finds that they collectively support approval of the general release under the narrow circumstances

presented by this case: a settlement negotiated by experienced counsel on both sides, in a case

involving multiple non-FLSA claims, and under circumstances where it does not appear that the

plaintiff has any known potential claims outstanding.  Accordingly, the undersigned will not strike

the general release.

### D. Confidentiality Provision

Finally, the undersigned must address the confidentiality provision.  "Absent some

compelling reason, the sealing from public scrutiny of FLSA agreements between employees and

employers would thwart the public's independent interest in assuring that employees' wages are

fair and thus do not endanger 'the national health and well-being.'" *Hogan v. Allstate Beverage*

*Co.*, 821 F. Supp. 2d 1274, 1283 (M.D. Ala. 2011) (quoting *Brooklyn Savings Bank v. O'Neil*, 324

U.S. 697, 708 (1945)). While an FLSA confidentiality provision is not *per se* unenforceable, a

party seeking to include one must show compelling reasons why it should be upheld. *Briggins v.*

*Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1280 (N.D. Ala. 2014).

Here, the parties have not provided particularly compelling reasons for the confidentiality

provision.  However, they have pointed out that the agreement itself, along with the remainder of

the docket in this case, is public record and not "seal[ed] from public scrutiny," *Hogan*, 821 F. Supp. 2d at 1283. Rather, the confidentiality provision limits Lewis's ability to publicize the agreement and its terms. The confidentiality provision also lacks features the undersigned has found particularly problematic, such as a liquidated damages provision for violations. *See, e.g., Kelly v. Aspire Physical Recovery at Hoover, LLC*, No. 2:17-CV-00961-JHE, 2018 WL 3186961, at *3 (N.D. Ala. June 28, 2018). And, again, the undersigned notes the non-FLSA claims asserted in this action; Defendants would be free, without court involvement, to insert a confidentiality provision into a settlement agreement covering only Lewis's state law claims. As with the general release, the undersigned finds the confidentiality provision to be permissible under the narrow circumstances here.

### III. Conclusion

The undersigned finds Lewis's FLSA claim represents a bona fide dispute over FLSA provisions, and the parties' settlement is a fair and reasonable resolution of this bona fide dispute. Therefore, the joint motion for approval of the settlement (doc. 23) is **GRANTED**, and the settlement is **APPROVED**. A separate order will be entered.

DONE this 29th day of May, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE